JOHN C. NORDLUM v. GREAT NORTHERN RAILWAY COMPANY.[1]

May 3, 1929.

No. 27,159.

[1]Reported in 225 N. W. 145.

A. L. Janes, J. H. Mulally and F. A. Grady, for appellant.
W. O. Braggans, for respondent.

Stone, J.

Suing to recover damages for the alleged negligence of defendant resulting in the flooding of his land and injury to crops, plaintiff had a verdict. Defendant appeals from the order denying its alternative motion for judgment notwithstanding or a new trial.

Plaintiff's land is an 80 in Marshall county. It has a natural but gradual slope to the west and south. In the quarter section to the west there is a swampy "pot hole" with an extreme depth of about three feet. Along the southern side of the 80 is a low sand ridge over which even under flood conditions water does not escape. Some time before plaintiff's occupancy of the 80, defendant built a single-track railroad running due north and south along the west end of it. The embankment is so low that the ties are raised but little above the level of the surrounding prairie. The material was taken from the ditches on either side.

Just off plaintiff's land to the north is a natural shallow run or swale. Its course is south of west. It is intersected by the railroad just north of the northwest corner of plaintiff's land. The theory of the case, according to the complaint, is that plaintiff's land has been flooded because of the inadequacy of this ditch to convey south the water running into it from the natural run. The language is "that said ditch by reason of the negligent and unskillful acts of defendant is inadequate in size to convey said waters flowing into it and said ditch overflows along plaintiff's lands and empties the waters therein conveyed from north of plaintiff's lands onto plaintiff's lands."

The trouble with plaintiff's case is that there is not a particle of evidence in support of that averment. Plaintiff himself knows nothing about conditions before the railroad was built and testifies that the ditch on the east side of the track has a "good fall all the

way" three quarters of a mile south to the Middle river. A qualified engineer who made a survey for plaintiff testified that the railroad ditch "with reference to the capacity of the swale * * * has sufficient capacity for the area. * * * [It is] a ditch sufficiently deep so that the water from this run is carried southward * * * a mile from this point to the Middle river." Against this testimony, itself quite ruinous of plaintiff's theory, there is nothing to show that the ditch ever overflowed or that the water backed up and out of it onto plaintiff's premises or that the combination of railroad embankment and ditch has so dammed the drainage of the area as to back water on this plaintiff's land. Our search of the record discloses nothing upon which such an inference could be based. In consequence the verdict cannot stand.

We do not overlook the location and character of a culvert under the railroad embankment at a point a bit south of the middle of the west line of plaintiff's 80, or the evidence that when water flows through that culvert its course is to the east rather than to the west. In the absence of proof that after getting into the ditch on the east side of the embankment the water escapes onto plaintiff's premises, the direction and volume of flow through the culvert remain immaterial. We are not overlooking, either, proof that at one time for a few hours during extreme flood conditions employes of defendant dammed the east ditch at a point south of the culvert thereby setting water back onto plaintiff's premises. That act may have been negligent and damaging to plaintiff, but the case was not tried upon the theory that it was the only negligence. The verdict of $700 is not confined to the damages which the jury considered may have resulted from that one act. So the case is not one for judgment notwithstanding the verdict. There must be a new trial.

In passing it may be worth while to say that our consideration of this case has been hindered because much of the testimony has reference to plats and counsel did not make such a record as to enable a reviewer to know what the witnesses were talking about. For example, there was no attempt, when witnesses referred to a low place "here" or "there" on a plat, to have the record show to what exhibit or to what precise location on it he was referring.

Order reversed.